Carl B. STRAKER, Plaintiff,

v.

**METROPOLITAN TRANSIT AUTHORITY, New York City Transit Authority, and Transport Workers Union of Greater New York, Local 100, Defendants.**

No. 03–CV–1756 (FB)(KAM).

United States District Court,
E.D. New York.

Sept. 9, 2004.

Regina Felton, Esq., Felton & Associates, Brooklyn, NY, for Plaintiff.

Victor Levy, Esq., Richard Schoolman, Esq., Brooklyn, NY, for Defendant New York City Transit Authority.

Andrea L. Lazarow, Esq., Kennedy, Schwartz & Cure, P.C., New York City, for Defendant Transport Workers Union of Greater New York, Local 100.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Pending before the Court are two motions challenging the amended complaint of plaintiff Carl B. Straker ("Straker"),

who principally alleges procedural improprieties arising from the handling of a mandatory drug test to which he was subjected. First, defendant New York City Transit Authority ("NYCTA") moves "for a judgment pursuant to Rule 12(b)(1), (5), and (6), and Rule 12(c) of the Federal Rules of Civil Procedure dismissing the amended complaint on the ground that plaintiff has failed to allege facts which could support any federal claim or state a cause of action." [NYCTA]'s Notice of Motion to Dismiss at 1. Second, defendant Transit Workers Union of Greater New York, Local 100 ("TWU") moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). With respect to NYCTA's motion to dismiss, the Court (1) grants the motion as to Counts I and II but *sua sponte* grants leave to amend Count II, and (2) denies the motion as to Counts III and IV but *sua sponte* directs that Straker file a more definite statement as to Count III pursuant to Fed.R.Civ.P. 12(e). With respect to TWU's motion to dismiss Count V, the Court construes Straker's claim as alleging a cognizable state law claim, retains supplemental jurisdiction over the claim, and denies TWU's motion to dismiss.

## I.

Though named by Straker as a defendant, Metropolitan Transit Authority has not appeared as a party. NYCTA volunteers that "[p]laintiff's claims against Metropolitan 'Transit' Authority should be dismissed given that no such organization exists." Memorandum of Law in Support of [NYCTA's] Motion to Dismiss at 18. Straker does not contend otherwise. Although NYCTA concedes that an organization by the name of "Metropolitan *Transportation* Authority" exists, the Court's docket does not contain an affidavit of service on Metropolitan Transportation Authority. The Court *sua sponte* dismisses Metropolitan Transit Authority as a party. *See Block v. First Blood Assoc.,* 691 F.Supp. 685, 697 (S.D.N.Y.1988) ("nonexistent" parties "should be considered sham parties . . . against whom no cause of action can be stated").

## II.

NYCTA's and TWU's motions are evaluated pursuant to Fed.R.Civ.P. 12(b)(6).[1] In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts as true the plaintiff's factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,* 290 F.3d 476, 479 (2d Cir.2002). In addition to the allegations contained within the complaint, the Court "may consider facts set forth in exhibits attached as part of the complaint," *Chance v. Armstrong,* 143 F.3d 698, 700 n. 1 (2d Cir.1998), as well as "any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel.Co.,* 62 F.3d 69, 72 (2d Cir.1995) (citation omitted).

"Dismissal is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

1. Although NYCTA's omnibus motion cites Fed.R.Civ.P. 12(b)(1), (5), (6) and Fed.R.Civ.P. 12(c), NYCTA has not specified which rule or rules apply to each claim. NYCTA does not argue that the Court lacks subject matter jurisdiction (Rule 12(b)(1)) with respect to any of Straker's claims or that process against it was insufficient (Rule 12(b)(5)). Similarly, inasmuch as "defendant may not move under Rule 12(c) until after he has answered," 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE: Civil § 1367 at 513 (1990) ("5 Wright & Miller"), Rule 12(c) appears to be inapplicable. The Court deduces that NYCTA moves to dismiss Straker's claims pursuant to Rule 12(b)(6).

which would entitle him to relief.'" *Chance*, 143 F.3d at 701. "This rule applies with particular force where the plaintiff alleges civil rights violations[.]" *Id.* (citation omitted). "Because the complaint must allege facts which confer a cognizable right of action, 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir.2003) (citation omitted).

## III.

Straker's Amended Complaint ("Amend. Compl.") alleges that he worked for NYC-TA since 1987 and as a train operator since 1992. On January 23, 2002, he appeared for an annual physical examination; part of that examination required him to provide a urine sample for mandatory drug testing. Straker did not provide a sample; he alleges that he was physically unable to comply because of a flare-up of his herpes genitalis.

NYCTA construed his non-compliance as a "refusal" and terminated him. Before it did so, however, NYCTA referred Straker to several physicians to determine whether he suffered from a medical condition that rendered him unable to provide the required sample; by and large, those physicians concluded that there was no medical basis to excuse Straker's failure to urinate. Broadly stated, Straker alleges that in referring his case to the various physicians for evaluation, NYCTA failed to follow drug testing regulations promulgated by the Department of Transportation ("DOT Guidelines"), and that several of those physicians conspired with NYCTA to deprive him of his civil rights on account of his African–American race.

Straker alleges that he and his union filed a grievance, which was arbitrated over the course of three days before the Tripartite Arbitration Board ("TAB"). Straker testified before the TAB, as did a number of other individuals. On January 11, 2003, the TAB issued a twenty-three page Opinion and Award, a copy of which is appended to Straker's Amended Complaint as Exhibit A, finalizing Straker's termination. After observing initially that the applicable Collective Bargaining Agreement provided that "[r]efusal to take [mandatory drug] test(s) ... will be deemed an admission of improper use of Controlled Substances or Drugs and will result in dismissal from service[,]" Amend. Compl., Ex. A (Opinion and Award) at 3, the TAB determined that Straker "was not a credible witness" and rejected his arguments that the urine testing and review procedures had been violated. Amend. Compl. at ¶¶ 47–48; Ex. A at 3–23.

Straker initiated his action on April 10, 2003. His complaint, as amended, alleges four causes of action against NYCTA (Counts I through IV) and one against TWU (Count V).[2]

Count I alleges that by failing to follow the DOT Guidelines regarding testing protocols, NYCTA "violated 42 U.S.C. § 1983 in that it deprived plaintiff of his job without procedural due process[.]" Amend. Compl. at 20.

Count II alleges that NYCTA, "together with physicians Harris M. Naglar, M.D. and Avram M. Nemetz, M.D., engaged in conduct calculated to support a finding that plaintiff 'refused' to render a urine sample" because of Straker's race, thereby "violat[ing] 42 U.S.C. § 1985(3) in that [NYCTA] subjected plaintiff to invidious, racially discriminatory conduct by deviating from [the DOT guidelines] and by dis-

**2.** Straker's original complaint advanced nine causes of action. The factual allegations and the exhibits in both the original and Amended Complaint appear to be identical.

closing plaintiff's medical condition to plaintiff's colleagues, supervisors, management and the Department of Labor Relations." *Id.* at 21.

Count III alleges "[t]hat the contractual relationship between [NYCTA] and Affiliated Physicians [the group of doctors to whom NYCTA referred Straker's case] facilitated [NYCTA's] material representations to the [TAB] regarding plaintiff's 'refusal,' [and] that the misrepresentations were offered to the [TAB] with the expectation that the misrepresentations would be relied upon. Plaintiff was injured in that he was deprived of employment and its emoluments, for a period of ten months violating 42 U.S.C. § 1983." *Id.* at 22.

Count IV alleges that Straker "is a qualified person suffering from disability as set forth in the Rehabilitation Act of 1973[;]" that he "suffered from a debilitating illness and was handicapped within the meaning of the statute[;]" that he "was qualified as a train operator[;]" and that "he was discharged under the pretext that he refused to give a urine specimen but was discharged because of his handicap." *Id.*

Count V alleges that a TWU representative, James Mahoney, approached one of Straker's physicians and "instruct[ed] the doctor not to cooperate" with Straker during the arbitration proceedings. *Id.* at ¶ 87. By so doing, TWU "attempted to and did seriously undermine plaintiff's defense as well as the arbitration process[,]" *id.* at 22–23, thereby "breach[ing] its duty of fair representation before the [TAB]" in violation of "federal labor law." *Id.*

## IV.

### A. Count I: Due Process/Violation of DOT Guidelines

Straker alleges that NYCTA did not follow DOT Guidelines testing protocols, thereby "depriv[ing him] of his job without procedural due process[.]" Amend. Compl. at 20. NYCTA is a government agency of the City of New York; Straker, therefore, is a governmental employee. *See Epter v. New York City Transit Auth.,* 216 F.Supp.2d 131, 137 (E.D.N.Y.2002) (N.Y.CTA is a governmental agency); *Donnelly v. McLellan,* 889 F.Supp. 136, 140 (D.Vt.1995) (noting that "the New York City Transit Authority has been held to be an agency of the City of New York by a variety of courts and for a broad range of statutory purposes").

In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court declared that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." If a protected property or liberty interest is "implicated, the right to some kind of prior hearing is paramount." *Id.* at 570–71, 92 S.Ct. 2701.

█ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. Thus, an at-will employee does not have a protected property interest in his or her continued employment. *See Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002) ("Employees at will have no protectable property interest in their continued employment"). "But a protectable property interest may arise in a situation where an employee may be removed only for cause. Indeed, in this circuit, a person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge or he can prove a *de facto* system of tenure." *Id.See also Hor-*

vath v. Westport Library Ass'n, 362 F.3d 147, 151 (2d Cir.2004) ("There is no question that '[a] public employee who has a right not to be fired without 'just cause' ... has a property interest in her employment that qualifies for ... protections of procedural due process.' ") (citation omitted).

■ As for the liberty interest, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty ... interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329–30 (2d Cir.2004). "Loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. at 330. In the case of government employees, a deprivation of a liberty interest without due process of law arises "when an alleged government defamation occurs in the course of dismissal from government employment. This type of claim is commonly referred to as a 'stigma-plus' claim." Id.

■ Straker has not alleged that he possessed a protected property interest. However, based on (1) his many years of service with NYCTA and his apparent expectation of continued employment, and (2) those provisions within the applicable collective bargaining agreement that afford aggrieved employees the right to arbitrate adverse employment actions, the Court assumes, arguendo, that Straker has a protected property interest.[3] Further, although Straker has not alleged that he was stigmatized in the course of his termi-

nation, the Court will assume, arguendo, that he was. Nonetheless, Straker's procedural due process claim, whether based on a property or liberty interest, or both, fails.

■ A government employee who has a property interest in his or her continued employment or a liberty interest to be free of termination without stigma is entitled to " 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment." Munafo v. Metro. Transp. Auth. 285 F.3d 201, 212 (2d Cir.2002) (citation omitted). Straker has not alleged that he was deprived of adequate notice, an explanation of the NYCTA's evidence against him, or an opportunity to be heard. To the contrary, Straker's Amended Complaint alleges that he was notified of the action that was taken against him, that he was given an explanation, that he was afforded an opportunity to present evidence on his behalf, and that he availed himself of that opportunity by, inter alia, testifying before and presenting evidence to the TAB.

Accordingly, pursuant to Fed.R.Civ.P. 12(b)(6), Count I is dismissed. Because Straker's own pleadings conclusively demonstrate that he was afforded all process due him, there is no point in permitting Straker an opportunity (even though he has not sought one) to amend his Amended Complaint. See Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir.1998) (citing futility as grounds for denying leave to amend).

---

**3.** The Court notes that the DOT Guidelines "do not confer any property interests." Drake v. Lab. Corp. of Am. Holdings, 290 F.Supp.2d 352, 361 (E.D.N.Y.2003); see also Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170 (2d Cir.1998) ("there is no implied private right of action for employees under those regulations").

## B. Count II: 42 U.S.C.1985(3)/Conspiracy

### 1.

Straker alleges that NYCTA, in violation of § 1985(3), conspired with Doctors Naglar and Nemetz to deprive him of his employment on account of his race.

"The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived. of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087. (2d Cir.1993). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (citation omitted).

NYCTA contends that Straker has not pled any facts that support his claim of racial discrimination. In response, Straker argues the Court should draw an inference of race-based discrimination because he was terminated despite (1) his exemplary employment record, (2) the expert medical testimony he presented to the TAB that his herpes genitalis prevented him from urinating on command, and (3) the absence of any allegation by NYCTA that he had used controlled substances. The Court agrees with NYCTA that the factors Straker cited do not permit a reasonable inference of racial discrimination. The issue is whether a bald allegation of racial discrimination that is factually unsupported and wholly conclusory can survive a motion to dismiss.

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), provides the appropriate starting point. There, the United States Court of Appeals for the Second Circuit had affirmed the Rule 12(b)(6) dismissal of the plaintiff's national origin and age discrimination claims because the plaintiff had not pled facts sufficient to constitute a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In so doing, the court noted that "[i]t is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Swierkiewicz v. Sorema, N.A.*, 5 Fed.Appx. 63, 64 (2d Cir. Mar.12, 2001) (unpublished).

"[G]rant[ing] *certiorari* to resolve a split among the Courts of Appeals concerning the proper pleading standard for employment discrimination cases[,]" *Swierkiewicz*, 534 U.S. at 510, 122 S.Ct. 992, the Supreme Court unanimously held that a plaintiff alleging employment discrimination need not plead facts constituting a *prima facie* case under the *McDonnell Douglas* framework.[4] Reasoning that "[t]he *prima facie* case under *McDonnell*

---

4. As the Supreme Court observed, "[t]he majority of Courts of Appeals ha[d] held that a plaintiff need not plead a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in order to survive a motion to dismiss." *Id.* at 510 n. 2, 122 S.Ct. 992 (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998); and *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924 (8th Cir.1993)). "Others, however, maintain[ed] that a complaint must contain factual allegations that support each element of a *prima facie* case." *Id.* (citing the Second Circuit's decision in *Swierkiewicz* and *Jackson v. Columbus*, 194 F.3d 737, 751 (6th Cir. 1999)).

*Douglas* ... is an evidentiary standard, not a pleading requirement[,]" *id.* at 510, 122 S.Ct. 992, and that "imposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)[,]" *id.* at 512, 122 S.Ct. 992, the Court concluded that an employment discrimination complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 510, 512, 122 S.Ct. 992. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 512, 122 S.Ct. 992. The Court noted that "with limited exceptions"—for example, when the Federal Rules require pleading with greater particularity, as with averments of fraud or mistake under Rule 9(b)—"Rule 8(a)'s simplified pleading standard applies to all civil actions[.]" *Id.* at 513, 122 S.Ct. 992.

Although *Swierkiewicz* rejected a "heightened" pleading standard for employment discrimination claims, as well as all other claims (except those subject to a statutorily-imposed stricter pleading standard), it did *not* address the standard for assessing claims that simply assert conclusory allegations unaccompanied by any factual support; on that discrete issue, a split amongst the circuit courts existed pre-*Swierkiewicz* and continues to exist.

Prior to *Swierkiewicz*, the Second Circuit had always adhered to the proposition that conclusory allegations were subject to dismissal under Rule 12(b)(6), regardless of the nature of the claim. As for non-discrimination claims, *see, e.g., De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.1996) (Sherman Act and civil RICO: "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)"); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990) (§ 1983 conspiracy to convict plaintiff of criminal contempt: "It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights."). As for discrimination claims, *see, e.g., Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir.2001) (sex discrimination: "'[B]ald assertions and conclusions of law' are not adequate, and 'a complaint consisting [only of] naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)'") (citation omitted); *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (racial and sex discrimination: "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)").

Other than in cases statutorily requiring a heightened pleading standard, the United States Courts of Appeals for the Seventh and District of Columbia Circuits took a different position pre-*Swierkiewicz*. As for non-discrimination claims, *see, e.g., S. Austin Coalition Cmty. Council v. SBC Communs., Inc.*, 274 F.3d 1168, 1171 (7th Cir.2001) (antitrust: "[C]ourts must follow the norm that a complaint is sufficient if any state of the world consistent with the complaint could support relief. It is not necessary that facts or the theory of relief be elaborated") (internal citations omitted); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983) (Omnibus Crime Control and Safe Streets Act of 1968: "The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based"); *see also* 5A Wright & Miller at 592 ("under the framework of the rules, plaintiff is not required either to disclose the facts underlying his claim or to limit the issues he wishes to

raise until after he has had an opportunity to engage in discovery"). As for discrimination claims, *see, e.g., Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (race discrimination: "Because racial discrimination in employment is 'a claim upon which relief can be granted,' this complaint could not be dismissed under Rule 12(b)(6). 'I was turned down for a job because of my race' is all a complaint has to say."); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1115 (D.C.Cir.2000) (race discrimination: "[W]e agree with the conclusion reached by Judge Easterbrook in *Bennett:* 'Because racial discrimination in employment is 'a claim upon which relief can be granted,' ... 'I was turned down for a job because of my race' is all a complaint has to say' to survive a motion to dismiss under Rule 12(b)(6).").

Not surprisingly, these courts have adhered to their respective precedents post-*Swierkiewicz.* As for non-discrimination claims, *see, e.g., Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir.2003) (§ 1983 claim alleging unlawful seizure of plaintiff's property: "Rule 8 does not require—or permit district judges to require—fact pleading"); *Walker v. Thompson,* 288 F.3d 1005, 1008 (7th Cir.2002) (§ 1983 claim by prisoner alleging retaliation by prison officials: cases "which say that 'conclusory allegations' of conspiracy, or allegations that fail to mention an overt act, are not enough to withstand a motion to dismiss cannot be squared with ... *Swierkiewicz* "); *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040–41 (D.C.Cir. 2003) (challenging redistricting under Voting Rights Act of 1965: "[D]ismissal under Rule 12(b)(6) was improper.... A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint"). As for discrimination claims, *see, e.g., Shah v. Inter–Continental Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir.2002) (national origin discrimination: "The plain-

tiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply."); *Ciralsky v. CIA,* 355 F.3d 661, 672 (D.C.Cir.2004) (religious discrimination: "Indeed, all that a Title VII complaint has to say to survive dismissal under Rule 12(b)(6) is: 'The plaintiff was terminated from his job because of his religion.' ").

In addressing a racial discrimination claim, the Ninth Circuit has recently joined the Seventh and D.C. Circuit courts. *See Maduka v. Sunrise Hosp.,* 375 F.3d 909, 912 (9th Cir.2004) ("The district court['s] ... conclu[sion] that the Complaint was inadequate ... because it included 'only conclusory allegations of racial discrimination, and ... fail[ed] to allege any fact or facts constituting either direct or circumstantial evidence of discrimination' ... is inconsistent with *Swierkiewicz's* willingness to 'allow[ ] lawsuits based on conclusory allegations of discrimination to go forward' ") (citation omitted). Prior to *Swierkiewicz,* the Ninth Circuit had held that conclusory allegations were insufficient to withstand a Rule 12(b)(6) motion. As for non-discrimination claims, *see, e.g., Price v. State of Hawaii,* 939 F.2d 702, 708 (9th Cir.1991) (alleging violation of public land trust: "[C]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act"); as for discrimination claims, *see, e.g., Williams v. O'Neill,* 23 Fed.Appx. 738, 740, 2001 WL 1491173 at *2 (9th Cir.2001) (disability claim: Plaintiff "failed to allege facts supporting his conclusory allegations that Defendants were discriminating and retaliating against him").

In contrast to the Seventh, Ninth, and D.C. Circuits, the First and Eleventh Circuits have rejected the proposition that *Swierkiewicz* should be understood as permitting a plaintiff to assert mere concluso-

ry allegations in support of a claim. In *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61 (1st Cir.2004), the First Circuit stated:

> From [*Swierkiewicz* ] we intuit that, in a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally. As we have said in a non-civil-rights context, the requirements of Rule 8(a)(2) are minimal—but 'minimal requirements are not tantamount to nonexistent requirements.' ... [I]n considering motions to dismiss courts should continue to 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'

*Id.* at 68. The Eleventh Circuit echoed this view in *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250 (11th Cir. 2004): "[W]hile *Swierkiewicz* made clear that pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Id.* at 1270–71.

In *Toussie v. Powell,* 323 F.3d 178 (2d Cir.2003), a case brought under 42 U.S.C. § 1983 alleging conspiracy to deprive plaintiff of due process and equal protection, the Second Circuit remarked in *dicta* that it did "not have occasion" to consider whether its prior statement in *Polur* (that "[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights") "remain[ed] valid in light of [*Swierkiewicz* ]." *Id.* at 185 n. 3. The

court noted that in *Walker,* Judge Posner had "argued that Second Circuit cases, including *Polur* ... 'cannot be squared with ... *Swierkiewicz.*' " *Id.* (citing *Walker,* 288 F.3d at 1008).

Curiously, in *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002), an ERISA case decided approximately three months after *Swierkiewicz* and ten months before *Toussie,* but not referenced in *Toussie,* the Second Circuit specifically stated, without mention of *Swierkiewicz,* that "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* at 240.

■ Subsequent to *Toussie,* the Second Circuit rendered an instructive decision in *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). There, an African–American New York State Police Officer asserted a race discrimination claim alleging, *inter alia,* that he "was required to perform tasks involving manual labor that white counselors were not required to perform[,]" that "he was made to stand facing a picture depicting a Civil War battlefield and a Confederate flag, thereby being subjected to racial animus[,]" and that "the denial of his promotion was in retaliation for complaining to the internal affirmative action officer and the EEOC about such discriminatory acts[.]" *Id.* at 79. After concluding that the plaintiff's complaint was "sufficient to meet the lenient pleading standard of Rule 8[,]" *id.* at 80, the court cautioned:

> That is not to say, of course, that all aspects of the complaint will ultimately survive dismissal. For one thing, there is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted. Although, reading the complaint carefully, the individual defen-

dants can discern which claims concern them and which do not, the complaint accuses all of the defendants of having violated all of the listed constitutional and statutory provisions. As a result, a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against *him.*

*Id.* at 80 (original emphasis). The final sentence supports the notion that if directly confronted with the issue, the Second Circuit would join the First and Eleventh Circuits, as does this Court, and conclude that when a heightened pleading standard is not required (as with Straker's allegation of race discrimination), a claim that does not contain any supporting factual allegations cannot withstand a Rule 12(b)(6) motion.

■ Conceptually, the Court believes that there is a distinction to be drawn between "fair notice of what the plaintiff's claim is" and "the grounds upon which it rests[,]" *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992; conclusory allegations cannot satisfy the latter. Count II, which contains no facts supporting the grounds upon which Straker's claim of race discrimination rests, must therefore be dismissed.

### 2.

■ Pursuant to Fed.R.Civ.P. 15(a), "leave (to replead) shall be freely given when justice so requires[.]" *Schlesinger Inv. P'ship v. Fluor Corp.,* 671 F.2d 739, 743 (2d Cir.1982) (citation omitted). Straker has not requested leave to amend any of his claims. "[A] district court has no duty to instruct plaintiffs that they may move to amend their complaint and, at least in counseled cases, cannot abuse its discretion by failing to *sua sponte* grant leave to amend." *Oparaji v. City of N.Y.,* 152 F.3d

920, 1998 WL 432988 at *2 (2d Cir.1998) (citing *In re Am. Express Co. S'holder Litig.,* 39 F.3d 395, 401 (2d Cir.1994)); *see also Anatian v. Coutts Bank (Switz.) Ltd.,* 193 F.3d 85, 89 (2d Cir.1999) ("the district court was not obliged to grant plaintiffs leave to amend their complaint. While we recognize that leave to amend should be freely granted ... we will not 'deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought' ") (citation omitted).

■ Nevertheless, the Court may *sua sponte* grant leave to amend. *See* 6 Wright and Miller at 521–22 ("the court, on its own initiative, may require the parties to amend to avoid dismissal"). The Court's discretion is "broad[,]" and "its exercise depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Local 802, Associated Musicians of Greater N.Y.,* 145 F.3d at 89 (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (liberal policy regarding leave to amend applies with "particular strictness" to allegations of civil rights violations).

■ Considering all the circumstances, the Court, in the exercise of its discretion, *sua sponte* will afford Straker the opportunity to amend Count II of his Amended Complaint.

### C. Count III: 42 U.S.C. § 1983/Contractual Relationship

Count III is vague and unclear. As best the Court can discern, it alleges that the mere existence of a contractual relation-

ship between NYCTA and the group of doctors who evaluated Straker entitles him to relief under § 1983 because that contract was necessary to or assisted in the alleged violation of his civil rights.

■ If an allegation or defense is so unclear or vague that the opposing party cannot reasonably be expected to respond, a party may move for a more definite statement under Fed.R.Civ.P. 12(e), which provides, in relevant part:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.

See also Swierkiewicz, 534 U.S. at 514, 122 S.Ct. 992 ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). See generally 5 Wright and Miller at 577–80 (1990).

■ Although NYCTA has not moved for a more definite statement, the Court may order one on its own initiative. See Alston v. Parker, 363 F.3d 229, 234 (3rd Cir.2004) ("The Defendants, or the District Court on its own initiative, [could] have sought a more definite statement to resolve any ambiguity or vagueness."); Bennett, 153 F.3d at 518 ("a district court should keep the case moving—if the claim is unclear, by requiring a more definite statement under Rule 12(e)"). Because NYCTA cannot reasonably be expected to respond to Count III in its present form, the Court sua sponte directs Straker to provide a more definite statement as to that Count.

## D. Count IV: Rehabilitation Act

The elements of a Rehabilitation Act claim are: (1) the plaintiff is an individual with a disability within the meaning of the act; (2) an employer covered by the statute had notice of the employee's disability; (3) the employee could perform the essential functions of the job at issue with or without reasonable accommodation; and (4) the employee suffered an adverse employment action because of his or her disability. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir.2004).

■ NYCTA argues that Straker has not pled facts establishing that he is an "individual with a disability" under the Rehabilitation Act. As with the ADA, "an individual with a disability" under the Rehabilitation Act is one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). NYCTA correctly contends that merely having a medical condition does not make one disabled for the purposes of the Act. It also correctly observes that Straker has not identified the major life activity that his herpes condition substantially limits.

Straker alleged that he "is a qualified person suffering from disability as set forth in the Rehabilitation Act of 1973[;]" that he "suffered from a debilitating illness and was handicapped within the meaning of the statute[;]" that he "was qualified as a train operator[,]" and that "he was discharged under the pretext that he refused to give a urine specimen but was discharged because of his handicap." Amend. Compl. at 22. Though short on detail, Count IV is a far cry from the wholly unsupported allegation of racial discrimination of Count II. The Court concludes that Straker has pled sufficient facts to put NYCTA on fair notice of the nature of his

claim. *See Wynder,* 360 F.3d at 79 (describing "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial") (citing *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995)). Accordingly, NYCTA's motion with respect to Count IV is denied.

### E. Count V: Duty of Fair Representation

Count V alleges that in violation of "federal labor law[,]" TWU "breached its duty of fair representation before the [TAB]" when a TWU representative approached one of Straker's physicians and "instruct[ed] the doctor not to cooperate" during the arbitration proceedings. *Id.* at 22–23.

■ Straker's allegations do not give rise to any cognizable federal claim. For purposes of federal law, breach of the duty of fair representation is governed by the Labor Management Relations Act ("LMRA"). The LMRA, however, does not vest federal district courts with subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation. *See Ayres v. Int'l Bhd. of Elec. Workers,* 666 F.2d 441, 444 (9th Cir.1982) ("We hold that section 301(a) of the Act does not grant this court jurisdiction over the claims of an individual employed by a political subdivision of a state."); *Cunningham v. Local 30, Internat'l Union of Operating Eng'rs,* 234 F.Supp.2d 383, 395–96 (S.D.N.Y.2002) (collecting cases).

However, as TWU concedes, "[a] labor organization representing public sector employees in New York State has a duty of fair representation under the New York Public Employees' Fair Employment Act, § 209–a(2)(C)." Defendant TWU's Memo-

randum of Law in Support of Motion to Dismiss the Complaint, at 3. *See also Cunningham,* 234 F.Supp.2d at 395 ("New York courts have recognized a [state law] duty of fair representation owed by public sector unions.") (citations omitted); *Schmitt v. Hicksville UFSD No. 17,* 200 A.D.2d 661, 606 N.Y.S.2d 761, 762 (2d Dep't 1994) ("In order to establish a claim for breach of the duty of fair representation in violation of Civil Service Law § 209–a(2), it is necessary to show that the union's conduct was arbitrary, discriminatory, or in bad faith").

■ Although Straker has not stated a federal claim, Count V will be construed as stating a cognizable state law claim. His failure to cite the correct source of his claim—the New York statute—is not fatal. *See Wynder,* 360 F.3d at 77 (observing that the Federal Rules' liberal pleading standards "do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one.... Factual allegations alone are what matters.'") (citation omitted). Because Count V survives (albeit under a different theory), TWU's motion to dismiss the Count is denied; the Court will retain supplemental jurisdiction over the state law claim, which perdures. *See* 28 U.S.C. § 1367(a).

### CONCLUSION

Metropolitan Transit Authority is dismissed as a party. NYCTA's motion to dismiss is granted as to Counts I and II, with leave to amend Count II within thirty days of the date of this Memorandum and Order, and denied as to Counts III and IV; as to Count III, Straker shall file a more definite statement within thirty days of the date of this Memorandum and Order; otherwise the Court will *sua sponte* dismiss the claim. Since the Court retains supplemental jurisdiction over Straker's state law unfair representation claim in Count V,

TWU's motion to dismiss that claim is denied.

**SO ORDERED.**