**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4265
_____

ALAN FEUERSTEIN

v.

GEORGE R. SIMPSON,
                              Appellant

On Appeal from the District Court
of the Virgin Islands
(District Court No.: 3-04-cv-00134)
District Judge:  Honorable Juan R. Sanchez

Submitted under Third Circuit LAR 34.1(a)
on May 16, 2014

Before:  RENDELL, JORDAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: September 3, 2014)

O P I N I O N

**RENDELL**, Circuit Judge:

Appellant George Simpson, acting *pro se*, appeals a jury verdict against him for

libel and defamation of character.   For the reasons set forth below, we will affirm.

# I. BACKGROUND

Simpson was the owner of a condominium unit in the Sapphire Bay Condominiums West in St. Thomas (SBCW).  Simpson and SBCW have been involved in multiple lawsuits against one another for over a decade.  SBCW was represented in some of these lawsuits by Appellee Alan Feuerstein.  In 2003, Simpson instituted a lawsuit against another SBCW condominium owner, Myrna Golden, regarding her ownership of cats.  Mrs. Golden was represented by Feuerstein in that litigation.

In September 2004, Simpson sent a letter to Mrs. Golden's husband in which he, among other things, accused Feuerstein of being dishonest in connection with his representation of Mrs. Golden.  Feuerstein demanded that Simpson retract the statement, but Simpson refused.  Accordingly, on October 14, 2004, Feuerstein filed the instant lawsuit against Simpson in the District Court for the Virgin Islands for libel, defamation of character, and intentional interference with business relations.

Feuerstein alleges that, shortly after he filed his lawsuit against Simpson, Simpson published several websites geared toward defaming and harming Feuerstein's professional reputation.  Simpson linked these websites to other websites, also allegedly published by Simpson and containing defamatory material regarding SBCW and certain members of the SBCW Board of Directors.  Feuerstein contends that Simpson also published a defamatory website targeting the SBCW's previous attorney, Andrew Capdeville, and that Mr. Capdeville was forced to withdraw as SBCW's counsel to litigate against Simpson with respect to the defamatory website.

Feuerstein did not amend his complaint before trial to include the allegedly defamatory websites but, as will be detailed below, they were the subject of discovery and were, ultimately, the basis for the jury's award in Feuerstein's favor. Simpson raises four issues on appeal, the most compelling of which is his claim that because no formal amendment of the complaint to include the websites occurred prior to trial, the verdict, based as it was on the websites, cannot stand. We will address the facts, and our reasoning, relating to that argument first, and then touch upon the remaining issues levelled by Simpson.[1]

## II.    DISCUSSION

### A.    Amendment of the Pleadings

On September 20, 2010, Feuerstein served responses and objections to Simpson's interrogatories and document requests. In response to an interrogatory stating, "[s]et forth each and every utterance, which you claim is defamatory by Defendant against Plaintiffs. State specific sentence(s) which you claim are defamatory and why," Feuerstein identified the websites and the specific defamatory statements on the websites.[2]

---

[1] Simpson's additional arguments include: (1) because Feuerstein did not suffer any damages as a result of Simpson's letter to Mr. Golden, which was the basis of his original complaint, Feuerstein cannot meet the $75,000 damages threshold requirement for diversity jurisdiction; (2) an essential party, the true publisher and owner of the allegedly defamatory websites, was never joined, in violation of Fed. R. Civ. P. 19; and (3) Feuerstein's statements during depositions, in which he called Simpson a "hallucinating lunatic," "bizarre," "sociopathic," and "schizophrenic," and his references to Simpson's "long relationship to the Extraterrestrial Community," biased the jury against him.

[2] These websites included http://alanrfeuersteinsucks.com, http://corporatedishonesty.com, http://stevenkerschner.net,

3

Simpson was questioned extensively at his deposition on October 22, 2012 regarding the defamatory websites. Feuerstein designated that deposition testimony in his deposition designations for trial, filed on November 30, 2012. In addition, Feuerstein filed a motion in limine on November 20, 2012, in which he stated, "[t]his case . . . claims damages from defamatory websites erected and maintained by the Defendant George R. Simpson and his nominees." (Doc. 186.) Simpson opposed the motion in limine and filed one of his own, arguing in both that evidence regarding the websites should not be permitted at trial. (Docs. 188, 191.) The District Court deferred ruling on these motions until trial. The issue of the relevance of the websites was also briefed in each of the parties' pretrial memoranda, both filed November 27, 2012. (Doc. 192, 194).

At the pretrial conference on November 29, 2012, the District Court specifically noted that Feuerstein's complaint did not contain any specific allegations regarding the websites. Feuerstein explained that the websites had been a subject of discovery and that the complaint alleged a campaign of libel, defamation and slander broad enough to include the websites. The District Judge asked to review the parties' written discovery regarding the websites. *See* Pretrial Conference Tr., pp. 47-48 (Doc. 0031111676996). Simpson continued to object to the inclusion of the websites. *See id*. at 49, 60.

On December 5, 2012, the first day of trial, after the jury was empanelled but before it began hearing evidence, the District Judge denied Simpson's motion in limine

http://andrewcapdevillesucks.com, http://feuersteinandsmithllpsucks.com, http://georgewoodssucks.com, and http://stephensokolowsucks.com. *See* Plaintiff's Responses and Objection to Defendant's Interrogatories and Document Requests, pp. 3-5. (Doc. 00311675051).

4

regarding the websites and stated that he believed that the existing complaint alleged a pattern of harassment sufficient to encompass the websites. Despite this, he stated that he would permit the complaint to be amended to include allegations regarding the websites. He noted that amendments to complaints are to be liberally granted, and stated, "I think everybody is aware of the issue [of the websites]." December 5, 2012 Tr., pp. 40-41. At no time did Feuerstein actually make a formal motion to amend his complaint; however, he filed an amended complaint that included allegations regarding the websites that same day.

Simpson mounted a defense at trial regarding the websites—namely, that though he agreed with them and supplied some of their content, he was not the one who actually published them. Simpson did not object to questioning regarding the websites at trial, and, indeed, questioned Feuerstein extensively about them.

At the conclusion of trial, in a discussion regarding amending the jury charge, Simpson indicated that he was not aware that the complaint had been amended:

> MR. SIMPSON: Well, those claims [regarding the websites] were not included in the complaint. The complaint was limited entirely to a letter.
>
> THE COURT: . . . I allowed [Feuerstein] to amend the complaint to conform to the proofs, including the website. So the websites are an issue.

December 7, 2012 Tr. pg. 110. *See also id*. at 113:

> [PLAINTIFF'S COUNSEL]: But the plaintiff testified that he had seven clients that he lost from this website.

5

　　　　　*　　　*　　　*

MR. SIMPSON: What's he talking about? I don't know what. I didn't get any revised complaint. Where is that? I was never served with a revised complaint. When was that served?

　　　　　*　　　*　　　*

THE COURT: Mr. Simpson, my chambers is going to give you a copy of the amended complaint, which I don't think it was necessary, but I think in an abundance of caution I amended. I allowed leave to amend to conform to the proofs at trial. And you will get a copy of it, just to include the website.

*Id.* at 113-14.

The Court eliminated any mention in the jury instructions of Simpson's letter to Jack Golden—the incident at the center of Feuerstein's original complaint—due to the fact that Feuerstein conceded that he suffered no damages as a result of the letter. Accordingly, the only defamatory and/or libelous statements at issue when the case was submitted to the jury were those contained in the websites. For the same reason, the Court did not charge the jury on Feuerstein's tortious interference charge, which was based solely on the contract for representation between Feuerstein and the Goldens. *See generally* December 7, 2012 Tr. pp. 112-13. After three days of trial, the jury returned a verdict in favor of Feuerstein, finding by special interrogatory that Simpson published the defamatory websites and was their owner, and awarded Feuerstein $6,600,000 in damages. Feuerstein consented to a reduction of the award to $1,175,000.

6

Simpson argues that the District Court erred in permitting Feuerstein to amend his complaint to add allegations regarding the defamatory websites.[3] Feuerstein argues that amendment was appropriate under Fed. R. Civ. P. 15(b)(1), which provides that:

> (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence. [4]

---

[3] Simpson does not specifically argue that the District Court's allowance of the amendment without a formal motion to amend constitutes reversible error. Nevertheless, in light of Simpson's *pro se* status, we consider whether such argument would have been successful and conclude that it would not. Neither Rule 15(b)(1) nor Rule 15(a)(2) actually requires, by its terms, a formal motion to amend. Rather, both provisions simply describe the circumstances under which a court may grant leave to amend. Accordingly, courts have consistently held that leave to amend may be granted without a formal motion. *See New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 105 (2d Cir. 1996) (approving of district court's sua sponte grant of leave to amend where there was no prejudice and stating that "Rule 15(b) requires no motion or formal amendment of the pleadings"); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005) ("[E]ven if not requested by the Plaintiff, the Court may sua sponte grant leave to amend."); *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (stating that "the Court may sua sponte grant leave to amend" under Rule 15(a)); *Craft v. United States*, 65 F. Supp. 2d 651, 656 (W.D. Mich. 1999), *rev'd on other grounds*, 535 U.S. 274 (2002) ("Rule 15(b) does not require a formal motion to amend the pleadings."); *Peterson v. Hofmann (In re Delta Phones, Inc.)*, 2005 Bankr. LEXIS 2550, at *29 (Bankr. N.D. Ill. Dec. 23, 2005) ("Rule 15(a) says only that a party needs leave of court to amend once the time to amend as a matter of course has passed. The Rule says nothing about asking for leave. Parties typically do ask, and leave can be denied if they do not, but a court need not stand on formalities. To further the policy of Rule 15(a), a court can grant leave to amend on its own initiative.") (internal quotation marks and citation omitted).

[4] It is true that the District Court permitted the pleadings to be amended on December 5th, prior to Simpson's objection at trial on December 7th. However, the District Court treated Simpson's pretrial motion in limine as an objection, and permitted amendment in response to that motion. *See* December 5, 2012 Tr. pp. 40-41.

7

We review the Court's ruling to permit the amendment for abuse of discretion. *Douglas v. Owens*, 50 F.3d 1226, 1235 (3d Cir. 1995).  In general, Rule 15 should be interpreted liberally, in favor of permitting amendment whenever doing so will serve the underlying purposes of the Rule.  *See Brandon v. Holt*, 469 U.S. 464, 471 n.19 (1985). We have held that the "touchstone" for deciding whether or not to grant leave to amend is whether the opposing party will be unduly prejudiced.  *See Evans Products Co. v. West American Ins. Co.*, 736 F.2d 920, 924 (3d Cir. 1984) ("The primary consideration in determining whether leave to amend under Fed.R.Civ.P. 15(b) should be granted is prejudice to the opposing party.").

None of the circumstances we have deemed sufficient to deny amendment apply here.  Feuerstein argued—and the District Court agreed—that the complaint as originally pled was broad enough in alleging an ongoing pattern of libel and defamation to include the websites.  Whether or not this was correct matters little; the point is that it explains why Feuerstein did not move earlier to amend his complaint to include the websites. Feuerstein's belief that his complaint was already sufficient to include the websites also undermines any claim of bad faith or dilatory motive.

Most importantly, it is clear that Simpson suffered no undue prejudice as a result of the amendment.  Simpson was aware as early as September of 2010, when Feuerstein served his responses to Simpson's interrogatories, that Feuerstein believed the websites were defamatory and intended to put them at issue at trial.  Simpson was questioned

extensively about the websites during his deposition on October 22, 2012, and Feuerstein designated that testimony in his deposition designations. The parties briefed the relevance of the websites in motions in limine prior to the start of trial and in their pretrial memoranda. Indeed, Simpson presented a clear defense strategy at trial with respect to the websites, maintaining that he was not the publisher of the websites and could therefore not be held liable for their content. Simpson has not argued that his defense strategy would have been any different had the complaint been amended earlier to include allegations regarding the websites. Accordingly, in absence of any evidence of unexplained delay, bad faith or undue prejudice, we cannot say that the District Court abused its discretion in permitting Feuerstein to amend his complaint to include the websites.

**B.      Remaining Challenges**

**1.      Diversity Jurisdiction**

Simpson argues that the District Court lacked federal jurisdiction because Feuerstein's original complaint was based only on Simpson's letter to Mr. Golden, and that Feuerstein has since conceded that he suffered no actual damages as a result of the letter. Accordingly, Simpson argues, the $75,000 threshold damages requirement for diversity jurisdiction was not met at the onset of the lawsuit. This argument is meritless, because "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab*

9

*Co.*, 303 U.S. 283, 288-89 (1938); *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999).  Simpson has failed to point to any evidence indicating that Feuerstein lacked a good faith belief that his original claim was insufficient to create federal diversity jurisdiction.  In addition, Feuerstein has repeatedly urged that at the time he filed his original complaint, Simpson was engaged in an ongoing course of defamation and libel against him, and as such, his complaint encompassed additional defamatory statements beyond Simpson's letter to Mr. Golden.  Therefore, we cannot conclusively determine that Feuerstein lacked a good faith belief that his complaint met the statutory damages threshold required for federal diversity jurisdiction.

### 2.    Rule 19

Throughout the proceedings in the District Court and here, Simpson has claimed that he cannot be held liable for the allegedly defamatory statements contained on the websites because he did not publish the websites.  Rather, he claims, the websites were owned and published by a company called North American Alliance for Honest Corporate Management, and/or by a man named Randolph Lindsey.  Simpson claims that Feuerstein's failure to join Lindsey and North American Alliance for Honest Corporate Management in this lawsuit was in violation of Fed. R. Civ. P. 19, which provides in relevant part that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1).  Feuerstein claims that Randolph Lindsey is actually George Simpson's alter ego and does not exist as a separate person, and at the very least, Lindsey

10

and the North American Alliance for Honest Corporate Management are agents of Simpson. He notes that the jury found by special interrogatory that Simpson was responsible for the content of the websites.[5]

The burden of showing that joinder is necessary is on the party advocating for joinder. *See Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). Simpson does not point to any evidence other than his own testimony that Randolph Lindsey and/or the North American Alliance for Honest Corporate Management are the true owners of the websites at issue, or that these entities even exist.

In any case, the fact that Simpson may not have been the actual owner of the websites is of no moment. To prevail on a defamation claim under Virgin Islands law, a plaintiff must show that the defendant published the alleged defamatory statement to a third party. *VECC, Inc. v. Bank of N.S.*, 296 F. Supp. 2d 617, 622 (D.V.I. 2003). In a legal sense, to "publish" a defamatory statement merely means to communicate that statement to a person other than the person who is defamed. *See Black's Law Dictionary* 1428, (10th Ed. 2014) (defining "publish" as "[t]o communicate (defamatory words) to someone other than the person defamed."). Simpson admits that he supplied content for publication on the websites, and there was sufficient evidence for the jury to find that he "published" the allegedly defamatory statements contained therein. Simpson offers no support for his argument that the joinder of Randolph Lindsey, the North American

---

[5] Simpson evidently raised this argument in a motion for summary judgment filed approximately five months after the jury rendered its verdict. (Doc. 231.) The District Court denied this motion in an Order dated October 1, 2013. (Doc. 239.)

11

Alliance for Honest Corporate Management, or any other party was necessary for the complete adjudication of Feuerstein's claim that Simpson "published" the defamatory statements. Accordingly, Simpson has failed to sustain his burden with respect to joinder.

### 3. Inflammatory Statements in the Presence of the Jury

Finally, Simpson claims that Feuerstein's statements labeling Simpson a "hallucinating lunatic," "bizarre," "sociopathic," and "schizophrenic," and referencing Simpson's involvement with the extraterrestrial community biased the jury against him. The record is clear, however, that it was Simpson, and not Feuerstein or his counsel, who put these labels before the jury by repeatedly quoting from Feuerstein's deposition testimony. *See, e.g.*, December 5, 2012 Tr. pp. 94-95, 99; December 6, 2012 Tr. pp 89-90, 241-44, 248; December 7, 2012 Tr. pp. 8, 73-74, 92, 162-63. By affirmatively raising this inflammatory deposition testimony before the jury, Simpson, not Feuerstein, caused the purported bias of which he now complains. In other words, Simpson cannot complain on appeal of an error that he himself invited. *See Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014); *Lima v. Newark Police Dep't*, 658 F.3d 324, 333 n.2 (3d Cir. 2011).

### III. CONCLUSION

To the extent Simpson otherwise challenges the sufficiency of the evidence or makes any remaining claims in his appeal that are not specifically addressed herein, we find such claims to be without merit. Accordingly, for the reasons set forth above, we will affirm the judgment of the District Court.