Trevor BURNS, Plaintiff,

v.

Sgt. W. TROMBLY, Correctional Officer; Upstate C.F.; S. Brown, Correctional Officer, Upstate C.F.; T. Quinn, Correctional Officer, Upstate C.F.; M. Lavigne, Correctional Officer, Upstate C.F.; J. Colby, Correctional Officer, Upstate C.F.; C. Crossman, Correctional Officer, Upstate C.F.; Sgt. John Doe I, Correctional Officer, Upstate C.F.; Sgt. John Doe II, Correctional Officer, Upstate C.F.; Lt. John Doe I, Correctional Officer, Upstate C.F.; Lt. John Doe II, Correctional Officer, Upstate C.F.; J. McGraw, Correctional Officer, Upstate C.F.; E. Russell, Correctional Officer, Upstate C.F.; B. Clark, Correctional Officer, Upstate C.F.; G. Waterson, Registered Nurse, Upstate C.F.; J. Cheseboro, Registered Nurse, Upstate C.F.; Captain D. Uhler, Correctional Officer, Upstate C.F.; Donald Wood, Correctional Officer, Upstate C.F.; and Robert K. Woods, Superintendent, Upstate C.F., Defendants.

Civil Action No. 9:05–cv–1204 (GLS/GHL).

United States District Court, N.D. New York.

May 7, 2008.

Trevor Burns, Attica Correctional Facility, Attica, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Maria Moran, Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### ORDER

GARY L. SHARPE, District Judge.

The above-captioned matter comes to this court following a Report–Recommendation by Magistrate Judge George H. Lowe, duly filed March 21, 2008. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Magistrate Judge's Report–Recommendation for clear error, it is hereby

ORDERED, that the Report–Recommendation of Magistrate Judge George H. Lowe filed March 21, 2008 is ACCEPTED in its entirety for the reasons state therein, and it is further

ORDERED, that Defendants' motion for partial summary judgment (Dkt. No. 58) is **GRANTED,** and that Plaintiff's claims against the four "John Doe" defendants are dismissed without prejudice, and it is further

ORDERED, that Plaintiff's official-capacity claims, and his Fourteenth Amendment claims, against the remaining defendants are dismissed with prejudice, and it is further

ORDERED, that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities are dismissed with prejudice.

IT IS SO ORDERED

### REPORT–RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, brought pursuant to 42 U.S.C. § 1983, has been referred to the undersigned for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, in this action, Trevor Burns ("Plaintiff"), an inmate at Attica Correctional Facility, alleges that, when he was incarcerated at Upstate Correctional Facility during October 2004, eighteen employees of the New York State Department of Correctional Services ("DOCS") violated his constitutional rights under the Eighth and Four-

teenth Amendments when (1) they used excessive force during an attempt to move Plaintiff to a different prison cell, and (2) they were deliberately indifferent to Plaintiff's serious medical needs arising from that use of excessive force. (*See generally* Dkt. No. 1.)

Currently pending before the Court is Defendants' motion for partial summary judgment, which seeks the dismissal of the following claims: (1) Plaintiff's claims against the four "John Doe" Defendants; (2) Plaintiffs claims against the remaining fourteen Defendants in their official capacities; (3) Plaintiff's Fourteenth Amendment claims against the remaining fourteen Defendants; and (4) Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities. (Dkt. No. 58.)[1] For the reasons set forth below, I recommend that Defendants' motion for partial summary judgment be granted.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint (Dkt. No. 1) alleges as follows.

On or about October 14, 2004, Defendant **Trombly** ordered Defendants **Brown** and **Donald Wood** to move Plaintiff from "10 ... C Company 25 Cell to 10 ... B Company 5 Cell by any means of force." (Dkt. No. 1, ¶ 6[4] [Plf.'s Compl.].) Defendants **Brown** and **Donald Wood** applied full restraints to Plaintiff. (*Id.* at ¶ 6[5].) Once the restraints had been secured, Defendants **Brown** and **Donald Wood** carried Plaintiff from one cell to the next-Defendant **Donald Wood** with a retention strap in one hand and Plaintiff's shirt in the

other, and Defendant **Brown** with Plaintiff's shirt in one hand and Plaintiff's handcuffed wrists in the other. (*Id.* at ¶ 6[6].) Once they reached 10 B Company 5 Cell, Defendant **Trombly** became "extremely angry," and he and Defendant **Quinn** ordered Defendants **Lavigne** and **Colby** to dress in "riot gear [and] to use force on [Plaintiff]." (*Id.* at ¶¶ 6[7], 6[9].)

At that point, Plaintiff alleges the following uses of excessive force occurred on or about October 14, 2004:

1. Defendant **Lavigne** attempted to "bang [Plaintiff's] head against the wall," and Defendants **Brown, Lavigne** and **Donald Wood** together succeeded in "forcefully bang[ing] [Plaintiff's] head against the wall with tremendous force." (*Id.* at ¶¶ 6[10]–6[11].)

2. Defendants **Brown, Lavigne, Colby, Crossman** and **Donald Wood** "pulled [Plaintiff] from the wall and forcefully slamed [sic] [Plaintiff] to the floor ... face first [,] with [Defendant] **Colby** grabbing [Plaintiff's] head [and] slaming [sic] it down to the ground with tremendous force." (*Id.* at ¶ 6[12].)

3. Defendant **Colby** choked Plaintiff by placing his knee on Plaintiff's head and grabbing his neck. (*Id.* at ¶ 6[13].)

4. Defendants **Brown, Lavigne, Crossman** and **Donald Wood** "all forcefully pressed on top of [Plaintiff] causing [Plaintiff] to gasph [sic] for air and fall unconscious." (*Id.* at ¶ 6[13].)

5. Defendant **Brown** tightened Plaintiff's handcuffs "beyond full capacity," causing Plaintiff to "scream in pain and his

---

1. I note that Defendants expressly "concede" that "a trial is needed to resolve" (1) Plaintiff's Eighth Amendment excessive-force claims against Defendants Trombly, Brown, Lavigne, Colby, Crossman, McGraw, Russell, and Donald Wood, and (2) Plaintiff's Eighth Amendment deliberate-indifference claims against Defendants Waterson andCheseboro. (Dkt. No. 58, Part 3, at 8 [Defs.' Memo. of Law].)

hands to swell like boxing gloves." (*Id.* at ¶ 6[14].)

6. Upon Defendant **Trombly's** orders, Defendants **Colby, Crossman, Lavigne, Brown** and **Donald Wood** picked up Plaintiff and threw him into his new cell, which caused Plaintiff to hit his head on the side of his bed. (*Id.* at ¶ 6[15].)

7. Defendant **Trombly** ordered Defendants **Crossman** and **Donald Wood** to tie Plaintiff's arms and legs with a sheet and "push him under the bed." (*Id.* at ¶ 6[16].)

8. Plaintiff lost consciousness while Defendants **Sgt. John Doe 1, Sgt. John Doe 2, Lt. John Doe 1,** and **Lt. John Doe 2** watched him from the cell door. (*Id.* at ¶ 6[17].)

9. Defendants **Lavigne, McGraw, Crossman, Russell,** and **Trombly** took Plaintiff to the hospital, and as they were taking him back after he had been medically cleared, Plaintiff "felt numerous blows about the head, back, ribs and [felt a] final blow from a blunt object to the back of the head knocking [Plaintiff] unconscious again." (*Id.* at ¶¶ 6[18]–6[21].)

10. Upon Defendant **Trombly's** orders, Defendants **Lavigne, Crossman, Colby,** and **Brown** threw him into his cell face first while both his arms and legs were restrained. (*Id.* at ¶ 6[24].)

11. Defendant **Brown** slammed Plaintiff's head into the ground. (*Id.* at ¶ 6[25].)

12. Defendant **Trombly** again ordered **Defendant Donald Wood** to tie Plaintiff's hands and feet with sheets and push him under the bed. (*Id.* at ¶ 6[26].)

13. While **Defendant Burns** tied Plaintiff's hands and feet with sheets, **Defendants Lavigne** and **Brown** "applied tremendous presure [sic]" to Plaintiff's back and shoulders, "causing [him] to scream in pain." (*Id.* at ¶ 6[27].)

After the actions outlined above took place, Plaintiff states he suffered "abrasions on both wrist [sic], ankles, face, and back, swelling about the cheeks eye's [sic], two massive knots on the back and side of the head, [and] sharp shocking pain in the back and head with a little blood from the mouth and nose." (*Id.* ¶ 6[29].) He states that he fell unconscious at approximately 11:00 a.m., drifting in and out of consciousness. (*Id.* at ¶¶ 6[30]–6[31].) At about that time, Defendant **Clark** took photographs of Plaintiff's injuries, and ignored his plea for medical assistance. (*Id.* at ¶ 6[31].)

At or about 1:30 p.m., Plaintiff became unconscious again, and Defendant **Waterson** arrived at his cell for emergency sick call at or about 2:30 p.m. (*Id.* at ¶¶ 6[32]–6[33].) After explaining his symptoms and the nature of his injuries to Defendant **Waterson**, Plaintiff was informed by Defendant **Waterson** that "his condition [was] not an emergency" and "your [sic] a big guy you can handle it." (*Id.* at ¶¶ 6[34]–6[36].) On or about October 15, 2004, Plaintiff again requested emergency sick call after falling unconscious in his cell. (*Id.* at ¶¶ 6[37]–6[38].) After showing Defendant **Cheseboro** his injuries, Defendant **Cheseboro** refused to treat Plaintiff, stating that there was no emergency condition and that Plaintiff was abusing the sick call system. (*Id.* at ¶¶ 6[40]–6[42].)

On or about October 18, 2004, Plaintiff sent Defendant **Robert Woods** a letter requesting an investigation of the above outlined events. (*Id.* at ¶ 6[43].) On or about October 21, 2004, Plaintiff received a letter from Defendant **Uhler,** stating that upon investigation, all staff members were found to have acted appropriately. (*Id.* at ¶¶ 6[45]–6[46].)

**B. Summary of Defendants' Motion for Partial Summary Judgment**

In their motion, Defendants argue that the majority of claims asserted in Plain-

tiff's Complaint should be dismissed for four reasons. (Dkt. No. 58, Part 3, at 3–9 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiff's claims against the four "John Doe" Defendants should be dismissed because those four Defendants have not yet been named by Plaintiff, or served with process, during the 120 days following the filing of the complaint, and Plaintiff has failed to show good cause excusing this failure. (*Id.* at 1, note 1.) Second, Defendants argue that Plaintiffs claims against the remaining fourteen Defendants in their official capacities should be dismissed because those state employees are protected from liability, for actions taken in their official capacities, under the Eleventh Amendment. (*Id.* at 1.) Third, Defendants argue that Plaintiff's Fourteenth Amendment claims against the remaining fourteen Defendants should be dismissed because there are no factual allegations, or evidence, establishing any violation of the Fourteenth Amendment (only factual allegations asserting a violation of the Eighth Amendment). (*Id.* at 7–8.) Finally, Defendants argue that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities should be dismissed because Plaintiff has failed to adduce sufficient record evidence to estab-

lish the requisite personal involvement of those four Defendants in the constitutional violations alleged. (*Id.* at 3–7.)

## II. GOVERNING LEGAL STANDARDS

### A. Motion for Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists,[2] the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[3]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[4] The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[5] Rather, "[a] dispute regarding a material fact is *genuine* if the

**2.** A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**3.** *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

**4.** Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**5.** Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading...."); *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. 1348; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

What this burden-shifting standard means when a plaintiff has failed to *properly* respond to a defendant's Rule 7.1 Statement of Material Facts is that the facts as set forth in that Rule 7.1 Statement will be accepted as true[7] to the extent that (1) those facts are supported by the evidence in the record,[8] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[9]

Implied in the above-stated standard is the fact that a district court has no duty to perform an *independent* review of the record to find proof of a factual dispute, even if the non-movant is proceeding *pro se*.[10]

In the event the district court chooses to conduct such an independent review of the record, any affidavit submitted by the non-movant, in order to be sufficient to create a factual issue for purposes of a summary judgment motion, must, among other things, not be conclusory.[11] (An affidavit is conclusory if, for example, its assertions lack any supporting factual detail or are too general.)[12] Moreover, the affidavit's assertions must be made on personal

**6.** *Ross v. McGinnis*, 00–CV–0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

**7.** *See* N.D.N.Y. L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."*) [emphasis in original].

**8.** *See Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted].

**9.** *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

**10.** *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso*, 112 Fed.Appx. 106 (2d Cir.2004), *aff'g*, 97–CV–1741, 2004 WL 5477530, at *4, 2004 U.S. Dist. LEXIS 20746, at *12–13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (grant-

ing motion for summary judgment); *Fox v. Amtrak*, 04–CV–1144, 2006 WL 395269, at *1, 2006 U.S. Dist. LEXIS 9147, at *1–4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F.Supp.2d 369, 371–372 (N.D.N.Y.2003) (Hurd, J.).

**11.** *See* Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir.1970) (stating that the purpose of Fed.R.Civ.P. 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

**12.** *See, e.g., Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir.1999) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West–Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there

knowledge.[13] Finally, even where an affidavit is nonconclusory and is made on personal knowledge, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [14]

## B. Recently Clarified Legal Standard for Motions to Dismiss

To the extent that a defendant's motion for summary judgment under Fed.R.Civ.P. 56 is based entirely on the plaintiff's complaint,[15] such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b) (6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273–74 (2d Cir.1968) [citations omitted], *accord, Katz v. Molic*, 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to

was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Fed.R.Civ.P. 56[e] ); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

13. Fed.R.Civ.P. 56(c) ("Supporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

14. *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03–CV–3789, 2006 WL 357824, at *3–4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed.Appx. 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

15. (*See, e.g.*, Dkt. No. 58, Part 3, at 3, 8 [Defs.' Mem. of Law, arguing, *inter alia*, that Plaintiff's official-capacity claims, and his Fourteenth Amendment claim, should be dismissed for failure to state a claim upon which relief might be granted].)

dismiss the complaint] is proper with or without notice to the parties.").

Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[16]

For these reasons, it is appropriate to briefly summarize the recently revised legal standard governing Rule 12(b)(6) motions to dismiss. Under Fed.R.Civ.P. 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2);[17] or (2) a challenge to the legal cognizability of the claim.[18]

---

**16.** The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis]* at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b).

**17.** *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *In re Princeton Indus., Inc.*, 39 B.R. 140, 143 (Bankr.S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

**18.** *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research v. Generac Power Sys.*, 02–CV–6205, 2004 WL 2613993, at *1–2, 2004 U.S. Dist. LEXIS 23314, at *4–5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro. Trans. Auth.*, 333 F.Supp.2d 91, 101–102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.*, 01–CV–4430, 2002 WL 313156, at *2, 2002 U.S. Dist. LEXIS 1658, at *6–7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion—one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [19] The purpose of this rule is to "facilitate a proper decision on the merits." [20] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [21]

The Supreme Court has long characterized this pleading requirement under Fed. R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [22] However, it is well established that even this liberal notice pleading standard "has its limits." [23] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [24]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate

**19.** *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99); *see also Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99).

**20.** *See Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992 (quoting *Conley*, 355 U.S. at 48, 78 S.Ct. 99).

**21.** *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir.1996] ).

**22.** *See, e.g., Swierkiewicz*, 534 U.S. at 513–514, 122 S.Ct. 992 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

**23.** 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed. 2003).

**24.** *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals*, 125 S.Ct. at 1634–1635, *Christopher v. Harbury*, 536 U.S. 403, 416–422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234–235 (2d Cir.2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208–209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, 35 Fed.Appx. 7, 13–14 (2d Cir.2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 [2001] ).

decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007).[25] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965–74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

The Second Circuit has repeatedly recognized the controlling nature of the clarified plausibility standard that was articulated by the Supreme Court in *Twombly*. *See Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original]; *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("We affirm the district court's dismissal of the conspiracy claims because plaintiffs are unable to allege facts that would provide 'plausible grounds to infer an agreement' [under *Bell Atlantic v. Twombly* ]"); *cf. Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) ("*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level (4)27' ") [internal citation omitted].[26]

25. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S.Ct. at 1969.

26. I note that, since the Supreme Court handed down *Twombly* in May of 2007, I have occasionally read language in Summary Orders issued by the Second Circuit, continuing to cite the now "retired" statement originating in *Conley v. Gibson*. *See Abuhouran v. Lans*, 269 Fed.Appx. 134, 134–35 (2d Cir. 2008) [citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir.1999), which cites *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), which cites *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ]; *accord, Faconti v. Potter*, 242 Fed.Appx. 775, 777 (2d Cir.2007) [citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), which cites *Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987), which cites *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ]; *Douek v. U.S. Dept. of Educ.*, 231 Fed.Appx. 100, 102 (2d Cir.2007) [citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999), which quotes *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ]. When I read that language in a Summary Order, I am reminded of what Chief Judge Alex Kozinski, of the United States Court of Appeals for the Ninth Circuit, has stated about unpublished decisions: "Unpublished dispositions—unlike opinions—are often drafted entirely by law clerks and staff attorneys. . . . There is simply no time or opportunity to fine-tune the language of the dis-

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [27] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [28] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[29] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [30] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [31]

However, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are

---

position .... [T]he people making the sausage [are] tell[ing] you it's not safe for human consumption ....." Tony Mauro, "Difference of Opinion," *Legal Times,* at 10 (Apr. 12, 2004) (reporting interview of Judge Kozinski); *accord,* Letter from Alex Kozinski, Circuit Judge, U.S. Court of Appeals for the Ninth Circuit, to Samuel A. Alito, Jr., Chair, Advisory Comm. on Appellate Rule 4, at 2 (Jan. 16, 2004), available at http://www.nonpublication.com/kozinskiletter.pdf ("[T]he people making the sausage [are] tell[ing] you it's not safe for human consumption ....").

27. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

28. *Hernandez,* 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

29. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96–CV–7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gill v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [consid-

ering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138–39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

30. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

31. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

not absolutely suspended." [32] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [33]

## III. ANALYSIS

### A. Claims Against Four "John Doe" Defendants

■ In his Opposition Memorandum of Law, Plaintiff does not respond to Defendants' argument that Plaintiff's claims against the four "John Doe" Defendants should be dismissed because those four Defendants have not yet been named or served by Plaintiff. (Dkt. No. 60, Part 2 [Plf.'s Opp. Memo. of Law].)

Under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, "[w]here a properly filed motion is unopposed and the

Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3). Because Plaintiff has failed to oppose that portion of Defendants' motion requesting dismissal of Plaintiff's claims against the four "John Doe" Defendants, Plaintiff has "consented" to that motion under Local Rule 7.1(b)(3). Because Plaintiff has "consented" to that portion of Defendants' motion, the only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to the relief requested" through that argument. This burden has appropriately been characterized as "modest." [34] This is

32. *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison*, 05–CV–1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04–CV–0479, 2007 WL 2027912, at *2 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains*, 04–CV–5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05–CV–1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04–CV–1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04–CV1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05–CV–0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

33. *Cuoco*, 222 F.3d at 112 (finding that re-pleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Of

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

34. *See, e.g., Ciaprazi v. Goord*, 02–CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)]; *accord, Saunders v. Ricks*, 03–CV–0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.), *Smith v. Woods*, 03–CV–0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.); *see also Race Safe Sys. v. Indy Racing League*, 251 F.Supp.2d 1106, 1109–1110 (N.D.N.Y.2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 980 F.Supp. 106, 106–07 (N.D.N.Y.1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to mo-

because, as a practical matter, the burden requires only that Defendants present an argument that is "facially meritorious."[35] Here, I find that Defendants' argument is, at the very least, facially meritorious.

On September 23, 2005, Plaintiff filed his Complaint in this action. (Dkt. No. 1.) On December 1, 2005, the Court issued an Order directing Plaintiff, *inter alia*, to "comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action." (Dkt. No. 6, at 6) [Order of District Judge Gary L. Sharpe.] On December 20, 2005, the Clerk's Office notified Plaintiff that he must submit completed "USM 285 [F]orms" for each of the Defendants in order for the U.S. Marshals Service to be able to effect service of process on those Defendants. (Dkt. No. 8.) On March 23, 2006, Plaintiff was reminded of this duty. (Dkt. No. 12.)

During the nearly two years that have followed since the issuance of that reminder, Plaintiff has been given an adequate opportunity to conduct discovery in this matter. For example, on October 11, 2006, the Court filed a Scheduling Order, permitting a six-month period of time in which to conduct discovery in this action. (Dkt. No. 37.) On April 27, 2007, the

Court extended that discovery period by two months. (Dkt. No. 54.) Indeed, on June 22, 2007, the Court granted in part Plaintiff's motion to compel discovery. (Dkt. No. 57.) However, despite these facts, as of the date of this Report–Recommendation, Plaintiff has failed to identify, and submit USM 285 Forms permitting service of process on, the four "John Doe" Defendants in this action.

For all of these reasons, I recommend that Plaintiff's claims against the four "John Doe" Defendants be dismissed without prejudice due to Plaintiff's failure to name or serve those four Defendants.

## B. Claims Against Defendants in Their Official Capacities

■ In response to Defendants' argument that Plaintiff's claims against the remaining fourteen Defendants in their official capacities should be dismissed under the Eleventh Amendment, Plaintiff states that he "withdraws any claim against all defendants in their official capacities . . . ." (Dkt. No. 60, Part 2, at 1, 9, n. 1 [Plf.'s Opp. Memo. of Law].)

For a variety of reasons, Plaintiff is not able, at this late stage in the litigation, to

---

tion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 980 F.Supp. 106, 106 (N.D.N.Y.1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95–CV–989, 1996 WL 589372, at *2, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 1996 WL 589372 (N.D.N.Y.1996) (Pooler, J.).

35. *See, e.g., Hernandez v. Nash*, 00–CV–1564, 2003 WL 22143709, at *2–3, 2003 U.S. Dist. LEXIS 16258, at *7–8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord, Topliff v. Wal–Mart Stores East LP*, 04–CV–0297, 2007 WL 911891, at *7 & n. 43,

2007 U.S. Dist. LEXIS 20533, at *28 & n. 43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05–CV–0380, 2007 WL 894375, at *2 & n. 2, 2007 U.S. Dist. LEXIS 24356, at *5–6 & n. 2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04–CV–1311, 2007 WL 951447, at *5 & n. 40, 2007 U.S. Dist. LEXIS 26583, at *28–29 & n. 40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576, 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03–CV–0170, 2006 WL 3940592, at *2 & n. 2, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 WL 189021, 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

file a notice of voluntary dismissal without prejudice of his selected claims against all Defendants in their official capacities. For example, Fed.R.Civ.P. 41 regards dismissals of "actions," not "claims." *See* Fed. R.Civ.P. 41(a)(1)(i). In addition, because both an Answer and a motion for summary judgment have been filed (Dkt.Nos. 35, 38, 53, 58), a voluntary dismissal of this action may be effected only through a Stipulation of Dismissal signed by all the parties to the action, or a Court Order. *See* Fed. R.Civ.P. 41(a)(1)(i), (2). I would not issue such an Order since, if Plaintiff were permitted to voluntarily dismiss his official-capacity claims without prejudice, he would be permitted to assert them (albeit in vain) later in another action.

However, Plaintiff's statement in footnote 1 of his Opposition Memorandum of Law is effectively a notice that he is consenting to Defendants' request for dismissal with prejudice of his official-capacity claims. As explained above in Part III.A. of this Report–Recommendation, because Plaintiff has "consented" to that portion of Defendants' motion under Local Rule 7.1(b)(3), the only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to the relief requested" through that argument. I find that they have done so, for the reasons articulated in their Memorandum of Law. (Dkt. No. 58, Part 3, at 3 [Defs.' Mem. of Law].)

For all of these reasons, I recommend that Plaintiff's official-capacity claims be dismissed *with prejudice* because of the Eleventh Amendment.

## C. Fourteenth Amendment Claims

■ In response to Defendants' argument that Plaintiff's Fourteenth Amendment claims against the remaining fourteen Defendants should be dismissed for failure to establish a Fourteenth Amendment violation, Plaintiff states that he "withdraws any claim against all defendants ... under the Fourteenth Amendment." (Dkt. No. 60, Part 2, at 1, 9, n. 2 [Plf.'s Opp. Memo. of Law].)

For the same reasons as articulated above in Part III.B. of this Report–Recommendation, I find that Plaintiff may not, at this late stage in the litigation, voluntarily dismiss without prejudice his Fourteenth Amendment claims against Defendants. However, again, Plaintiff's statement in footnote 1 of his Opposition Memorandum of Law is effectively a notice that he is consenting to Defendants' request for dismissal with prejudice of his Fourteenth Amendment claims. As explained above in Part III.A. of this Report–Recommendation, because Plaintiff has "consented" to that portion of Defendants' motion under Local Rule 7.1(b)(3), the only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to the relief requested" through that argument. I find that they have done so, for the reasons articulated in their Memorandum of Law. (Dkt. No. 58, Part 3, at 7–8 [Defs.' Mem. of Law].)

In particular, I note that Plaintiff points to no record evidence establishing a procedural due process violation, substantive due process violation, or equal protection violation, arising from the events alleged in his Complaint. (*See generally* Dkt. Nos. 1, 60.) Moreover, I note that the Supreme Court has repeatedly held that, "if a constitutional claim is covered by a specific constitutional provision ... Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the [more generalized notion] of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 392–94, 109

S.Ct. 1865, 104 L.Ed.2d 443 [1989] ).[36] Here, the constitutional claims asserted by Plaintiff are covered by the Eighth Amendment. Therefore, those claims must be analyzed under the Eighth Amendment, and not the more generalized notion of substantive due process under the Fourteenth Amendment.

For all of these reasons, I recommend that Plaintiff's Fourteenth Amendment claims be dismissed *with prejudice* for failure to adduce sufficient record evidence to establish a violation of the Fourteenth Amendment.

### D. Eighth Amendment Claims Against Quinn, Clark, Uhler and Robert Woods

▆▆▆▆ " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[37] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[38] If the defendant is a supervisory official, such as a correctional facility superintendent or a facility health services director, a mere "linkage" to the

unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[39] In other words, supervisory officials may not be held liable merely because they held a position of authority.[40] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[41]

In response to Defendants' argument that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities should be dismissed because Plaintiff has failed to adduce sufficient record evidence to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged, Plaintiff argues that, in light of the special status he enjoys as a *pro se* litigant, the record should be construed as containing

---

**36.** *See also Conn v. Gabbert,* 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (offering similar recitation of law before refusing to analyze claim of improper search under Fourteenth Amendment); *accord, Kia P. v. McIntyre,* 235 F.3d 749, 757–58 (2d Cir.2000).

**37.** *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987).

**38.** *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**39.** *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

**40.** *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996).

**41.** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

evidence sufficient to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged. (Dkt. No. 60, Part 2, at 3–4 [Plf.'s Opp. Memo. of Law].)

### 1. Defendant Quinn

■ With regard to Defendant Quinn, Plaintiff argues that Defendant Quinn was personally involved in the constitutional violations alleged by ordering Defendant Lavigne to dress in riot gear and use force against Plaintiff. (*Id.* at 4–5.) As evidence that Defendant Quinn issued such an order, Plaintiff points to only two portions of the record: (1) his sworn assertion on the matter, which is contained at Paragraph "6(9)" of his Verified Complaint; and (2) the "Use of Force Report" regarding the incident in question, attached to Defendants' motion papers (*see* Dkt. No. 58, Part 5, at 3–6 [Ex. B–1 to Moran Decl.]).

Paragraph "6(9)" of Plaintiff's Verified Complaint does not constitute sufficient evidence to create a genuine issue of material fact with regard to Defendant Quinn's personal involvement in the constitutional violations alleged because the assertion contained in that paragraph is not factually specific in any regard, nor does it indicate that Plaintiff possessed any personal knowledge of the source of the order in question; rather, the assertion is wholly conclusory in nature and based on mere speculation and conjecture. (*See* Dkt. No. 1, ¶ 6[9] [Plf.'s Compl., alleging that "Sgt./Lt. Quinn and Sgt. W. Trombly ordered C.O. N. Lavigne and C.O. Colby in riot gear to use force on Burns."].) *See also,* supra, notes 11–13 to this Report–Recommendation. I note that, in his deposition, Plaintiff acknowledged that he possessed no personal knowledge of the issuance of any such order (such as his overhearing it), but that his assertion that such an order was issued is based solely on "reports" he had read. (Dkt. No. 58, Part 5, at 27–28 [Ex. B to Moran Decl., attaching pages 56 and 57 of Plf.'s deposition transcript].)

Plaintiff's argument that the "Use of Force Report clearly indicates that defendant Lavigne was ordered by Sgt. Lt. Quinn to use force on plaintiff" is simply incorrect. (Dkt. No. 60, Part 2, at 5 [Plf.'s Opp. Memo. of Law].) The "Use of Force Report," and the documents accompanying it, contain no such indication, no matter how much special solicitude is afforded to Plaintiff. (*See* Dkt. No. 58, Part 5, at 3–19 [Exs. B–1 through B–17 to Moran Decl.].) In particular, I note that Defendants have adduced evidence that it was Defendant Trombly (and not Defendant Quinn) who issued the order to use force against Plaintiff. (*See* Dkt. No. 58, Part 5, at 6, 9 [Exs. B–4 and B–7 to Moran Decl.].)

Even though the Court has no duty to conduct an independent review of the record to find proof of a factual dispute (*see, supra,* note 10 of this Report–Recommendation), I have, out of special solicitude to Plaintiff, reviewed the documents provided by him in opposition to Defendants' motion, and I note that they contain a memorandum dated October 14, 2004, from Defendant Lavigne to Defendant Trombly, stating, in pertinent part, that "[o]n 10/14/04 at approximately 10:15 A.M., I officer N. Lavigne reported to 10 building B–Gallery per direction of Sergeant Quinn to assist the officers with an unruly inmate to be placed inside 10–B–5 cell." (Dkt. No. 60, Part 1, at 18 [Ex. C to Plf.'s Decl. in Opp.].) This document does *not* create a genuine issue of material fact with regard to Defendant Quinn's personal involvement in the constitutional violations alleged for two independent reasons. First, the memorandum says nothing whatsoever about Defendant Quinn ordering Defendant Lavigne to use force against Plaintiff (as opposed to ordering him to assist other

correctional officers, verbally persuade Plaintiff to enter his cell, and/or contribute to a *showing* of force to persuade Plaintiff to enter his cell). Indeed, to the contrary, the memorandum states it was a superior officer *present at the scene* (which Defendant Quinn was not, according to the available record evidence) [42] who directed that Defendant Lavigne use force against Plaintiff to place him in his cell. (*Id.* [stating "we were instructed [by a superior officer present at the scene] to place inmate Burns inside 10–B–5 cell...."].) Second, even if the memorandum had indicated that Defendant Quinn had directed Defendants Lavigne and Colby to "use force," there is a critical distinction between an order to "use force" and an order to "use excessive force."

Plaintiff's theory of liability against Defendant Quinn, which is premised merely on the fact that Quinn was a supervisor, is revealed when Plaintiff argues that Quinn was personally involved in the constitutional violations alleged because he "was supervising defendants Trombly, Wood, Brown, Colby, Clark, Russell, McGraw, Lavigne and Crossman during the incident." (Dkt. No. 60, Part 2, at 5–6 [Plf.'s Opp. Memo. of Law].) There is no record evidence that Defendant Quinn was present at the scene issuing orders to the referenced Defendants. Indeed, the undisputed record evidence is that Defendant Quinn was not present at the scene.[43] The mere fact that, during the incident, Defendant Quinn was somewhere else in the prison serving in a position of authority over the referenced Defendants is precisely the sort of liability that is precluded under 42 U.S.C. § 1983, which requires

something more than an officer's position as a supervisor for him to be liable for a constitutional violation.

## 2. Defendant Clark

With regard to Defendant Clark, Plaintiff argues that Defendant Clark was personally involved not in the (alleged) use of excessive force against Plaintiff but in the (alleged) failure to provide him adequate medical care following the use of that force. (Dkt. No. 60, Part 2, at 6–7 [Plf.'s Opp. Memo. of Law].) In particular, Plaintiff alleges that Defendant Clarke was personally involved in the deliberate indifference to his serious medical needs by refusing to cause Plaintiff to be transported to the prison's medical clinic immediately after the incident despite witnessing Plaintiff's (1) unconsciousness, (2) seizure, (3) facial swelling, and (4) request for medical treatment. (Dkt. No. 60, Part 2, at 6–7 [Plf.'s Opp. Memo. of Law].)

As evidence in support of this argument, Plaintiff points to three portions of the record: (1) a memorandum dated November 2, 2004, from Lt. R. Emery to Capt. Bezio regarding the incident, which states that Defendant Clark operated the video camera that videotaped the incident (Dkt. No. 60, Part 1, at 14 [Ex. "B(1)" to Plf.'s Decl. in Opp.]); (2) his sworn assertion in his Verified Complaint that, at or about 11:10 a.m. on October 14, 2004, while Defendant Clark was taking photographs of Plaintiff for purposes of the Use of Force Report, Plaintiff pled with Clark to take him to the prison's medical clinic (*see* Dkt. No. 1, ¶ 6[31]); and (3) a "Film Roll Card" dated October 14, 2004, which shows that Defendant Clark took Plaintiff's photograph "while he lay on the cell floor ...

---

**42.** (*See, e.g.,* Dkt. No. 58, Part 5, at 27–28 [Ex. B to Moran Decl., attaching pages 56 and 57 of Plf.'s deposition transcript, stating "Q. Okay. And did you actually see Sergeant or Lieutenant Quinn there? A. No.... Q. So his

name is based solely on some reports you read? A. Yeah. Q. You never actually saw him there? A. No."].)

**43.** (*Id.*)

after [sustaining] a serious injury" (Dkt. No. 60, Part 1, at 19–20 [Exs. "C(1)" and "C(2)" to Plf.'s Decl. in Opp.]; *see also* Dkt. No. 58, Part 5, at 21–22 [Exs. A–19 and A–20 to Moran Decl.]). Again, this evidence does not constitute sufficient evidence to create a genuine issue of material fact with regard to Defendant Clark's personal involvement in the alleged deliberate indifference to Plaintiff's serious medical needs.

The fact that Defendant Clark videotaped the incident in no way constitutes evidence that he was deliberately indifferent to any serious medical needs during the incident, which occurred between 10:15 a.m. and 11:00 a.m., according to Plaintiff's allegations. (Dkt. No. 1, ¶¶ 6[4]6[30] [Plf.'s Compl.].) Plaintiff does not allege that he asked Defendant Clark for medical care during the occurrence of the incident. (*Id.*) Furthermore, even if he had asked for such medical care, the evidence shows he was provided medical care, when he was brought to the prison's medical clinic, where he was examined by a physician. (Dkt. No. 1, ¶¶ 6[18]–6[20] [Plf.'s Compl.].)

Plaintiff first asked Defendant Clark for medical care after the incident was over, specifically, at or around 11:10 a.m. (Dkt. No. 1, ¶ 6[31] [Plf.'s Compl.].) The undisputed record evidence is that (1) Plaintiff did not explain to Defendant Clark *why* he needed to go to the medical clinic, (2) Defendant Clark in no way indicated to Plaintiff that he had heard Plaintiff's request, and (3) at the time that Plaintiff

made his request, Plaintiff was on the cell floor and Defendant Clark was behind the cell door's closed window.[44]

In response to Defendants' argument that no record evidence exists establishing that Defendant Clark heard Plaintiff's request, Plaintiff essentially argues that Defendant Clark nonetheless *should have known* that Plaintiff needed to go to the medical clinic based on what Defendant Clark had seen happen to Plaintiff, specifically, Plaintiff's (1) loss of consciousness, (2) seizure, and (3) facial swelling.

As for the loss of consciousness and/or seizure that Plaintiff allegedly experienced *before* 11:10 a.m.—i.e., at some point between 10:15 a.m. and 11:00 a.m.—the undisputed record evidence is that Defendant was examined by a physician (Dr. Wiesman) rather promptly after that loss of consciousness and/or seizure, at which time no injuries were noted in his medical records. (*See* Dkt. No. 58, Part 5, at 5, 9–17 [Exs. A–2 through A–3, and A–7 through A–15, to Moran Decl.]; Dkt. No. 1, ¶¶ 6[18]–6[20] [Plf.'s Compl.].)

As for the loss of consciousness and/or facial swelling that Plaintiff allegedly experienced *at* 11:10 a.m., no record evidence exists that Defendant Clark witnessed any loss of consciousness or facial swelling while standing outside Plaintiff's cell door at 11:10 a.m. For example, the photograph provided by Plaintiff (which was taken by Defendant Clark at 11:10 a.m.) indicates

---

44. (Dkt. No. 58, Part 5, at 25–27 [Ex. B to Moran Decl., attaching pages 54–56 of Plf.'s deposition transcript, stating "Q. Did [Defendant Clark] announce that he was there [at your cell]? A. Yeah. He knocked on the window....—the cell door window.... Q. Okay. And what did he say to you? A. He didn't say anything. Q. He just knocked? A. Yeah.... Q. Okay. So after he knocked what happened? A. I told him I needed to go to [the] clinic, and he just put a camera up and took the picture and left. Q. Okay. Did you say why you needed to go to the clinic? A. No. I didn't explain that to him. Q. Okay. So instead he just took a photo and he didn't say anything back to you? A. No. He didn't say anything. Q. Okay. How did you—are you sure he even heard what you said. A. No. I'm not sure...."].)

absolutely nothing of these things.[45] Even if the photograph indicated facial swelling, no evidence (or allegation) exists that Defendant Clark is a medical care professional trained or able to identify a prisoner's need for medical care based on seeing facial swelling through a cell door window. As for Plaintiff's alleged unconsciousness at 11:10 a.m. (when Defendant Clark was standing outside Plaintiff's cell door), Plaintiff's deposition testimony indicates that he was conscious (e.g., capable of sight, hearing, and speech) when Defendant Clark knocked on his cell door and then took a photograph of Plaintiff at 11:10 a.m.[46]

Finally, and more importantly, the undisputed record evidence indicates that, in fact, Plaintiff's cell was visited by Defendant Waterson (a registered nurse) at 11:10 a.m. on October 14, 2004. (Dkt. No. (Dkt. No. 58), Part 5, at 7–8 [Exs. A–5 and A–6 to Moran Decl., attaching Addendum to Use of Force Report, reporting on physical examination conducted by G. Waterson, RN, on 10/14/04, at 11:10 a.m.].) It is inconceivable to me how a rational factfinder could possibly hold Defendant Clark (a non-medical professional) liable for not causing Plaintiff to be brought to the prison's medical clinic at 11:10 a.m. on October 14, 2004, when, at that very time, Plaintiff was being examined by a medical professional. The Eighth Amendment simply does not impose a duty on a correctional officer to second-guess (and, indeed, ignore) the medical judgment of a prison medical care professional, under such circumstances (if ever).

### 3. Defendants Uhler and Robert Woods

■ With regard to Defendants Uhler and Robert Woods, Plaintiff's theory of personal involvement by these two Defendants is based "entirely upon the October 18, 2004, complaint sent to defendant Supt. Woods, [which] was investigated and responded to by defendant Uhler." (Dkt. No. 60, Part 2, at 8 [Plf.'s Opp. Memo. of Law].) That "complaint," a handwritten letter filling only half a page, is attached as Exhibit A to Plaintiff's Declaration in Opposition to Defendants' motion. (Dkt. No. 60, Part 1, at 10 [Ex. A to Plf.'s Decl. in Opp.].) The written response sent to Plaintiff by Defendant Uhler is attached at Exhibit "A(1)" to Plaintiff's Declaration in Opposition to Defendants' motion. (Dkt. No. 60, Part 1, at 11 [Ex. A–1 to Plf.'s Decl. in Opp.].) Simply stated, these two documents do not constitute sufficient evidence to create a genuine issue of material fact as to whether these two Defendants were personally involved in the constitutional violations alleged.

Generally, given the facts of this case and the legal arguments advanced by Plaintiff, Plaintiff must adduce evidence in support of one or both of two facts—notice of a constitutional violation and/or a reckless disregard of a constitutional violation—in order to show the personal involvement of these two supervisory officials, under the legal standard recited above. He has failed to adduce such evidence.

Plaintiff's letter was too brief and conclusory to place the two Defendants on notice that any constitutional violation had actually occurred. Moreover, their response was adequate and in no way demonstrative of any recklessness on their part. Defendant Woods (a high-ranking official at Upstate C.F.) had a right to

---

**45.** (*See* Dkt. No. 60, Part 1, at 19 [Ex. "C(1)" to Plf.'s Decl. in Opp.]); *see also* Dkt. No. 58, Part 5, at 22 [Ex. A–20 to Moran Decl.]

**46.** *See, supra,* note 38 of this Report–Recommendation.

refer Plaintiff's complaint to his subordinate officer, Defendant Uhler, for investigation and report, and to rely on that investigation and report. *See Shabazz v. Lee,* 03–CV–1520, 2007 WL 119429, at *7, n. 4 (N.D.N.Y. Jan. 10, 2007) (Homer, M.J.) (a superintendent's adoption of a recommendation by an investigating officer cannot by itself demonstrate that he failed to remedy misconduct) [citations omitted]. Similarly, Defendant Uhler (also a high-ranking official at Upstate C.F.) had a right to refer Plaintiff's complaint to his subordinate officer (Sergeant Sawyer), for investigation and report.

Moreover, Defendant Uhler's written response was prompt and adequate. Specifically, that written response indicated as follows: (1) the day after Plaintiff sent his letter of complaint to Defendant Woods, Sergeant Sawyer initiated his investigation of Plaintiff's Complaint; (2) during that investigation, Sergeant Sawyer interviewed Plaintiff; (3) during the investigation, Sergeant Sawyer reviewed the available documentation concerning the incident, which indicated that Plaintiff had been examined by medical staff on the date of the incident; (4) Sergeant Sawyer informed Plaintiff to employ sick-call procedures for any further medical issues; (5) Defendant Uhler concluded that, based on Sergeant Sawyer's report, and the available documentation concerning the incident, there was no mistreatment of Plaintiff by staff members; and (6) Defendant Uhler communicated this conclusion, and his rationale for the conclusion, in writing to Plaintiff three days after Plaintiff sent his letter of complaint to Defendants Woods. (Dkt. No. 60, Part 1, at 10–11 [Exs. A and A–1 to Plf.'s Decl. in Opp.].)

Despite arguing that his theory of personal involvement by these two Defendants is based "entirely" on the above two documents, Plaintiff goes on to argue that Defendant Woods was personally involved in the constitutional violations alleged also because he "was aware of Plaintiff's grievances concerning the use of excessive force and denial of medical treatment." (Dkt. No. 60, Part 2, at 9 [Plf.'s Opp. Memo. of Law].) The sole record documentation concerning these grievances (Grievance Nos. "UST21438–04" and "UST–21508–04") are attached at Exhibit B to Plaintiff's Declaration in Opposition to Defendants' motion. (Dkt. No. 60, Part 1, at 13–16 [Exs. B through B–3 to Plf.'s Decl. in Opp.].)

Again, these documents, which number four pages in length, do not constitute sufficient evidence to create a genuine issue of material fact as to whether Defendant Woods was personally involved in the constitutional violations alleged. The first grievance (Grievance No. "UST21438–04") was not even filed until October 21, 2004–at least three days after Defendant Woods had referred Plaintiff's letter of complaint to his subordinate, Defendant Uhler, for investigation and report, and the very same day that Defendant Uhler issued his written response to Plaintiff's letter of complaint to Defendant Woods. (Dkt. No. 60, Part 1, at 15 [Ex. B–2 to Plf.'s Decl. in Opp.].) Furthermore, the second grievance (Grievance No. "UST–21508–04") was not filed until October 28, 2004–a week after Defendant Wood's subordinate, Defendant Uhler, had issued his written response to Plaintiff's letter of complaint to Defendant Woods. (Dkt. No. 60, Part 1, at 14 [Ex. B–3 to Plf.'s Decl. in Opp.].) Thus, it would be implausible, if not wholly irrational, to conclude that the filing of Plaintiff's grievances (on October 21, 2004, and October 28, 2004) somehow increased Defendant Woods' duty as to how to respond to Plaintiff's letter complaint of October 18, 2004.

Furthermore, to the extent that Plaintiff is arguing that Defendant Woods was per-

sonally involved in the constitutional violations alleged by affirming the Inmate Grievance Program's denials of Plaintiff's two grievances, I reject that argument as well. No record evidence exists that Defendant Woods failed to decide Plaintiff's grievance appeals in a timely and procedurally proper manner. (Dkt. No. 60, Part 1, at 15–16 [Exs. B–2 and B–3 to Plf.'s Decl. in Opp.].) Furthermore, no record evidence exists that Defendant Woods' administrative decisions were subsequently reversed on an appeal to DOCS' Central Office Review Committee. Simply stated, the two grievance appeals presented to Defendants Woods were not sufficient to place him on notice that any constitutional violation had actually occurred. Moreover, his response to those grievance appeals was, under the circumstances, entirely adequate and in no way demonstrative of any recklessness on his part.

For all of these reasons, I recommend that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities be dismissed *with prejudice* because Plaintiff has failed to adduce sufficient record evidence to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for partial summary judgment (Dkt. No. 58) be *GRANTED*, and that, as a result, (1) Plaintiff's claims against the four "John Doe" Defendants be dismissed without prejudice, (2) Plaintiff's official-capacity claims, and his Fourteenth Amendment claims, against the remaining Defendants be dismissed *with prejudice*, and (3) Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities be dismissed *with prejudice*.[47]

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R.Civ.P. 72(b), Local Rule 72.1(c), and Fed. R.Civ.P. 6(a)(2), the parties have **TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS** (*see* Fed.R.Civ.P. 6[d]), from the date of this Report–Recommendation, within which to file objections to this Report–Recommendation. Such objections, if any, shall be filed with the Clerk of the Court. **FAILURE TO FILE TIMELY OBJECTIONS TO THIS REPORT–RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989]).

---

47. As indicated above in note 1 of this Report–Recommendation, the claims that would remain in this action, should the Court adopt this Report–Recommendation, would be (1) Plaintiff's Eighth Amendment excessive-force claims against Defendants Trombly, Brown, Lavigne, Colby, Crossman, McGraw, Russell, and Donald Wood, and (2) Plaintiff's Eighth Amendment deliberate-indifference claims against Defendants Waterson and Cheseboro. (Dkt. No. 58, Part 3, at 8 [Defs.' Memo. of Law].)